INVERARITY v. ZUMWALT, Justice of the Peace.

No. A-11978.   Oct. 28, 1953.

(262 P. 2d 725.)

Geo. L. Hill, McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., L. O. Thomas, County Atty., Craig County, Vinita, for respondent.

POWELL, P. J. D. P. Inverarity has filed in this court his petition, seeking a writ of mandamus requiring Geo. W. Zumwalt, Justice of the Peace, Vinita Township, Craig County, to dismiss a criminal complaint against him that has been pending since the 2nd day of November, 1949, involving a bogus check charge. Petitioner states that he has never been arraigned upon the charge, or afforded a preliminary hearing.

Petitioner alleges that he has been an inmate of the Oklahoma State Penitentiary since the 30th day of August, 1951, and prior thereto and subsequent to the filing of the charge in Craig County he was a resident of Oklahoma City. It is stated that on or about the 28th day of May, 1953, petitioner filed in the Justice of the Peace Court of Geo. W. Zumwalt, the respondent, a motion to dismiss the criminal complaint in question on the ground that said petitioner had not had a speedy and public trial, as guaranteed him by the Constitution and laws of the State of Oklahoma, and that on the 6th day of July, 1953 his motion to dismiss was overruled, and said charge is still pending against him.

The Attorney General and the County Attorney of Craig County filed a response for the State, attached to which is an affidavit of the complaining witness in the case pending in the justice court of the respondent, one by the County Attorney, and one executed by the Sheriff of Craig County.

On the 10th day of August, 1953, the petitioner was brought before this court and testified.

It appears from the record and the hearing that at the time the preliminary complaint was filed against D. P. Inverarity in the justice of the peace court of Geo. W. Zumwalt, the respondent, that it was based on an offense not then barred by the statute of limitations, and of course after the complaint was once filed and warrant issued, as appears to have been done in this case, the running of the statute of limitations was tolled. Tit. 22 O.S. 1951 § 152; Jarrett v. State, 49 Okla. Cr. 162, 292 P. 888; Hicks v. State, 54 Okla. Cr. 431, 23 P. 2d 219; Crain v. State, 70 Okla. Cr. 45, 104 P. 2d 450; Ex parte Hart, 95 Okla. Cr. 269, 244 P. 2d 859; State v. Waldrep, 80 Okla. Cr. 230, 158 P. 2d 368.

The sheriff swears in his affidavit that he was never able to locate the defendant until more than twenty months later when he was apprehended in Pawhuska, Oklahoma, with a load of cattle that he was charged in Oklahoma county with having stolen, and for the conviction of which in that county he is now serving a sentence in the penitentiary. Counsel for respondent assert that the sheriff was barred by Tit. 22 O.S. 1951 § 190 from arresting and taking the petitioner in control once he was in legal custody to answer a criminal charge in another jurisdiction.

Counsel for respondent further contend that "The constitutional right to a speedy trial, Art. II, § 20, Okla. Const., relates only to a 'trial by an impartial jury of the county in which the crime shall have been committed.' It relates clearly, therefore, to trial courts and not to preliminary hearings." It is further asserted that the statutory provisions providing for dismissal due to delay in prosecution refers to proceedings in the trial courts, after a defendant has been bound over to the district court for trial, and have no reference to the proceedings before an examining magistrate. It is claimed that there is no constitutional or statutory right of which the defendant has been deprived.

The respondent states:

"We have many times diligently searched for and have never been able to find any statute which would authorize the warden of the penitentiary to deliver a prisoner to the officers of another county for purposes of a preliminary hearing, even if the defendant had already been arrested and arraigned in such county, which in this instance is not the case. We have likewise never been able to find any statute which would authorize any court to direct that the prisoner be brought from the penitentiary to a county for purpose of a preliminary hearing and arraignment."

It was further orally stated by the Assistant Attorney General that in the past in instances an order had been obtained from the Governor to get a prisoner released to answer some other charge, but that had been abandoned as not authorized.

But the attorneys for respondent go on to say:

"However, if, without further legislative action, this court has the authority and will issue an order for the delivery of the prisoner by the warden of the penitentiary to the officials of the county for the purpose of arraignment and a preliminary hearing, we shall not only be satisfied, we shall be delighted. It will enable the State, in many instances, to secure the prisoner, by which the

state may proceed with the prosecution while the witnesses are available. And the officials of Craig County will be glad to accommodate the defendant by proceeding with his prosecution. This, however, he has not requested and probably does not desire."

The case of Hurst v. Pitman, 90 Okla. Cr. 329, 213 P. 2d 877, 878, is cited by the respondent. In that case the petitioner was confined in another state in a Federal penitentiary. Subsequent to arrest on the Federal charge three charges of burglary had been filed in a justice of the peace court of Pottawatomie county, Oklahoma, and the warden of the Federal penitentiary had been requested to hold the defendant on expiration of his term to answer the charges filed in Pottawatomie county. There the prisoner alleged repeated demands for trial on the state charges, or that the charges be dismissed. He prayed that this court issue an order directing the justice of the peace in Pottawatomie county to dismiss said charges.

In the Hurst case we held that the facts did not warrant the issuance of the writ of mandamus. It was pointed out that the prisoner was not within the State of Oklahoma. He was incarcerated in a Federal penitentiary and the county attorney of Pottawatomie county could not as a matter of right demand the delivery of said prisoner for trial. Under some unusual circumstance the Federal authorities might, within their discretion, deliver a prisoner to the state authorities, but we know of no law making such mandatory.

We further held in the Hurst case in syllabus four:

"Although no appeal will lie directly from a judgment of the Justice of the Peace court to the Criminal Court of Appeals, where said Justice of the Peace court sits as a committing magistrate for the purpose of holding a preliminary examination for one accused of a felony, the proceedings before such magistrate may be reduced to writing and filed with a transcript in the district court, and any error in such proceedings may later be presented to the Criminal Court of Appeals for review in case of a conviction in the District Court. For that reason, in a proper case, mandamus may lie from the Criminal Court of Appeals to a Justice of the Peace court sitting as a committing magistrate, and the issuance of such writ would be in aid of its exclusive appellate jurisdiction in criminal cases."

Also, in the case of Application of Cameron; 97 Okla. Cr. 81, 258 P. 2d 208, we did issue an order directing the dismissal of certain charges pending before the county judge, acting as an examining magistrate, because of the special reasons stated in the opinion. An unusual situation was presented. The county attorney advised the applicant in writing that he never intended to prosecute and never intended to dismiss the action. Therefore, it would appear that such prosecution was not in good faith. This, of course, at least violated the spirit of the constitutional and statutory provisions quoted and in effect challenged this court in its duties as a court of justice. For all the record showed, the charge may have been barred at the time of the filing or else at the time of the letter the state might have been without evidence to prove the charge. The excuse given for the attitude was the alleged sentiment against the appellant in the minds of the public. We rejected the argument that this court had no jurisdiction because there was no case yet pending that would justify the writ sought for and that this court did not have jurisdiction.[1]

Ordinarily, Art. II, § 20 of the Constitution of Oklahoma and the provisions of the statutes, Tit. 22 O.S. 1951 § 811 and 812, guaranteeing to persons accused of crime the right to a speedy trial, and held to entitle a person to a dismissal once

---

[1] See State ex rel. Andrews, County Attorney, v. Superior Court of Maricopa County, 39 Ariz. 242, 5 P. 2d 192, where a different conclusion was reached.

the case is pending in the trial court and is continued from time to time over the objections of the defendant, McLeod v. Graham, 6 Okla. Cr. 197, 118 P. 160; State ex rel. Sims v. Caruthers. 1 Okla. Cr. 428, 98 P. 474; Davidson v. State, 82 Okla. Cr. 402, 171 P. 2d 640, does not apply to preliminary hearings, but such provisions in extreme situations, as in the Cameron case, might be treated as authority for the issuance of a writ of mandamus by reason of the principle enunciated in Hurst v. Pitman, supra, and heretofore quoted.

On the subject generally of the authority of an appellate court to issue mandamus to compel an examining magistrate to act, see 35 Am. Jur., Mandamus, § 296; 98 Am. St. Rep. 905, Annotations; 55 C.J.S., Mandamus, § 69-b., §§ 73, 74.

Here the petitioner does not seek a preliminary hearing and a speedy trial on the charges pending against him. He merely seeks a dismissal. The state expresses a desire to proceed with the case while the witnesses are available, but knows of no statute authorizing the warden to deliver the prisoner to the sheriff of Craig county. If the prosecution does not proceed when the accused is within at least the jurisdiction of the supreme criminal court of the state because a statutory provision cannot be found providing for such procedure, then a hiatus would exist. There would be no remedy, and while awaiting the expiration of an incarceration for another crime, the state's witnesses might disappear or become deceased, and an injustice be done society, particularly when the accused might be serving a relatively short sentence for a minor crime at the time it was discovered by direct evidence that he was the perpetrator of a previously unsolved and particularly atrocious murder and where the state's witnesses were aged and in ill health. But contrariwise, the accused's witnesses who might clear him, might move away or become deceased during a long delay in bringing about a preliminary hearing, and where bound over to answer the charge given an early opportunity to vindicate himself. So this matter works both ways. Unusual delay excused because the proceeding had not gotten to the stage of a "case pending", may be compared to the assertion that a doctor is not needed until the patient has a "case" of something. There may be every evidence that the person is worn out and under par and might be threatened with almost anything, but until something definite actually develops, the physician is not required, because the person may never break down with anything. He might have tuberculosis in a very incipient stage, a condition conducive of cancer, an anemia or diabetes or any number of diseases that early attention might avoid or arrest. The vital importance of discovering and handling these things in the very earliest stage only the most unenlightened would dispute. So it is with a person charged with crime. He is entitled to every opportunity at the earliest possible moment to clear himself if innocent, which the law assumes, and places the burden of proof upon the prosecution. But if the accused is guilty from evidence in the hands of the prosecution, the state should at the earliest opportunity seek to so prove. Only on such basis can respect for law and orderly procedure be expected and maintained.

We reject the implication that the Criminal Court of Appeals of Oklahoma does not have supervisory powers over all criminal actions in every court from which any appeal may be perfected to this court, directly or through an intermediate court, as where a case has been "commenced" by the filing of a preliminary information and issuance of a warrant. To hold otherwise would be a demonstration of negative reasoning where positive thinking is required. This court is supreme in all criminal appeals from state courts of this state, and has authority to issue the writs of habeas corpus and mandamus, and other writs, in proper cases. Tit. 20 O.S. 1951 §§ 40 and 41. And as stated in 14 Am. Jur. p. 370:

"It is fundamental that every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction."

It is thought that a prosecuting attorney would be derelict in his duties where the charge was a felony and he had ample evidence to support prosecution, to not attempt through this court to procure an order for the delivery of a person for trial where already incarcerated in the State Penitentiary and where the chances would be great in case of delay in making out a case. In proper cases where the jurisdiction of this court would be invoked, either by the state or an accused, it would act in the interest of justice.

The circumstances presented in the within case do not entitle the petitioner to a writ of mandamus requiring the dismissal of the charges pending against him in Craig county for preliminary hearing, and in that he has not demanded arraignment on the charge, or waived same, and demanded trial, the writ is denied.

JONES and BRETT, JJ., concur.