NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION et al., Petitioners,

v.

The Honorable Charles L. OWENS, Judge of
the District Court of Oklahoma Coun-
ty, Oklahoma, Respondent.

No. 50103.

Supreme Court of Oklahoma.

Oct. 12, 1976.

James D. Fellers, John Joseph Snider, Burck Bailey, of Fellers, Snider, Blankenship & Bailey, Oklahoma City, for petitioners; George H. Gangwere and John Kitchin, Swanson, Midgley, Gangwere, Thurlo & Clarke, Kansas City, Mo., of counsel.

Ben L. Burdick, Clyde A. Muchmore, Richard C. Ford, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for respondent.

SIMMS, Justice.

Petitioner, National Collegiate Athletic Association, hereinafter referred to as NCAA, asks this Court to assume Original Jurisdiction and issue Mandamus compelling Respondent, Oklahoma County District Judge, to fix bond pursuant to the provisions of 12 O.S.1971, § 993(c) and thereby stay the temporary injunction issued against petitioner from the enforcement of one of its rules. Alternately, NCAA asks this Court to stay the enforcement of the temporary injunction.

The apparent genesis of this litigation was the August 15, 1975 passage, by a majority of the Division I members of the NCAA, of By-law 12-1, to become effec-

tive August 1, 1976. By-law 12–1, inter alia, provides:

"Section 1. Number of Coaches. A member institution shall not employ or otherwise utilize the services of coaches in excess of the following numbers:

(a) Division I Football—One head coach, eight assistant coaches, two part-time coaches."

Prior to the effective date of the aforementioned By-law, the Board of Regents of the University of Oklahoma and twelve University of Oklahoma assistant football coaches joined in an action brought in the District Court of Oklahoma County to enjoin petitioners from enforcement of By-law 12–1.

After evidentiary hearing, Respondent entered a temporary injunction which "temporarily enjoined (NCAA) from implementing or enforcing NCAA By-law 12–1, together with accompanying regulations insofar as these apply to the employment and utilization of the services of assistant football coaches in excess of the number of such coaches set out in By-law 12–1."

Following the adjudication of temporary enjoinment, petitioners filed a formal motion in the trial court requesting respondent to fix an amount of undertaking to stay the temporary injunction pending appeal to this Court. Respondent denied petitioner's motion for bond and stay, and petitioners now seek relief in this Court.

Initially, it is to be emphasized that we are not called upon in these special proceedings to decide the validity of By-law 12–1, nor are we asked to decide the legal propriety of issuance of temporary injunction against petitioners.

■ The sole issue herein treated succinctly put is whether or not the provisions of 12 O.S.1971, § 993(c) make it obligatory upon a trial judge, after issuance of temporary injunction and upon request of the party enjoined, to fix an amount of undertaking to stay the effect of a temporary injunction pending appeal to this Court. 12 O.S.1971, § 993 provides:

"(a) When an order * * *

(3) Grants a temporary injunction, * * *

the party aggrieved thereby may, within thirty (30) days thereafter, appeal from the order to the Supreme Court without awaiting the final determination in such cause, by filing the petition in error and the record on appeal in the Supreme Court, * * *.

(c) If the order grants a temporary injunction, the party seeking to appeal shall, if he desires to stay such order, give within ten (10) days after the order is rendered, an undertaking, with sufficient surety, to be approved by the clerk of the trial court, in an amount fixed by the judge, to secure the party procuring the injunction the damages he may sustain, including reasonable attorneys fees, in case it is finally decided that the temporary injunction was properly granted. The undertaking so made shall stay the effect of the temporary injunction pending appeal."

A strict and literal interpretation of § 993(c) might lead one to the conclusion that after proper request by the enjoined party, the trial judge is left with no discretion but to set bond and thereby stay the effect of the temporary injunction. Such a strict interpretation would raise very serious and pressing constitutional questions concerning the constitutional validity of the statute in issue.

Article IV, § 1, Okla.Const., provides: "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

It was held in *Inverarity v. Zumwalt*, 97 Okl.Cr. 294, 262 P.2d 725 (1953) that:

"It is fundamental that every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction."

It appears fundamental that an injunction, although temporary in form, may be said to be a formal command of the court couched in the form of an order, writ, or process, directing the persons named therein to refrain from doing certain specified acts which appear to be against equity or conscience, or, where the relief is mandatory in form, commanding them to take certain steps to undo the wrong or injury with which they are charged—a command to refrain from, or to do, a particular act.[1]

By the enactment of 12 O.S.1971, § 1381, et seq., the legislature recognized that the granting or refusal of issuance of injunctive relief rests solely and exclusively in the discretion of the judicial branch of government. If then, we are to read § 993(c), supra, literally to mean that a trial court has no alternative but to fix the amount of undertaking and stay the effect of temporary injunction upon request, we effectively divest the trial division of the judicial branch of government of its inherent discretionary power to protect and preserve the respective rights of litigants in injunctive and co-related lawsuits. In other words, the unilateral action of one party could totally negate an order granting temporary injunctive relief to the detriment of the party obtaining the temporary injunction.

We are not, however, compelled to hold that § 993(c) is violative of Art. IV, § 1, Okla.Const. Only if § 993(c) is obligatory upon the trial court would such a conclusion result.

The holding of *Allen v. Burkhart*, Okl., 377 P.2d 821 (1963) is that in view of the constitutional power of the Legislature to enact laws to meet needs of the state, there is a presumption that an Act of the Legislature is constitutional, and such an act would be upheld unless plainly and clearly within express prohibition and limitations fixed by the constitution. To sustain the rationale of *Allen, supra,* we must apply the rule of law set forth in *Scott-Rice Co. v. Oklahoma Tax Commission,* Okl., 503 P.2d 208 (1972) that a statute must be construed, if possible, so that it will be constitutional instead of unconstitutional.

To decree that the provisions of § 993(c) are mandatory would be to endorse a constitutionally impermissible invasion into inherent judicial authority by the legislative branch. On the other hand, we see no constitutional impediment in concluding that § 993(c) is discretionary in application, and that respondent, in the instant case, was vested with judicial discretion to either fix, or refuse to fix, the amount of an undertaking to stay the effect of the temporary injunction issued against petitioners.

Additionally, the temporary injunction was sought and issued for the purpose of enjoining the NCAA from implementing or enforcing certain provisions of its By-law 12–1 until its validity could be adjudicated. If relief is granted to NCAA as prayed, the provisions of By-law 12–1 would be enforced pending the outcome of the appeal. In other words, while the district court's judgment that By-law 12–1 is legally infirm is pending on appeal, the By-law would be implemented and enforced by NCAA.

In *Glascoe v. School District No. 22, McClain County,* 24 Okl. 236, 103 P. 687 (1909), our Court said:

"The purpose and objects of a temporary injunction is to preserve the controverted matter in status quo, and to prevent further perpetration of wrong or the doing of acts whereby the rights of any of the parties may be materially invaded."

---

1. 42 Am.Jur.2d 727, Injunctions, § 1.

882

There has been some dispute between the contestants herein as to exactly what constitutes the status quo. This Court has previously defined the status quo as the last actual, peaceful, noncontested condition which preceded pending controversy. *General Motors Corp., Argonaut Division v. Cook,* Okl., 528 P.2d 1110 (1974).

It matters little whether the status quo is measured by the relationship of the parties prior to adoption of By-law 12–1, after the adoption of By-law 12–1, or immediately before commencement of suit in the trial court. At all times suggested by either party as the proper point by which to define the status quo, the University had employed and was utilizing the services of more assistant football coaches than allowed under By-law 12–1. Prior to adoption of By-law 12–1, NCAA had never attempted to govern or regulate that number. The pending controversy arose by reason of the adoption of By-law 12–1.

If the status quo of the parties is to be maintained pending the appeal, the University is entitled to continue to employ and utilize assistant football coaches without compliance with the contested provisions of By-law 12–1. NCAA is no more entitled to stay the effect of the temporary injunction pending appeal than City of Del City was entitled to stay enforcement of injunctive relief granted against it in *City of Del City v. Harris,* Okl., 508 P.2d 264 (1973).

The record of evidence preceding the issuance of temporary injunction is not before us in these special proceedings. Therefore, at this point in time, we are unable to find that the temporary injunction was improvidently issued. We take judicial notice, however, of the fact that petitioners have apparently timely filed their appeal under the provisions of § 993 attacking the validity of the temporary injunction.

We therefore reserve possible determination of the validity of NCAA By-law 12–1, and of the issue of legal correctness of is-

suance of the temporary injunction for the interlocutory appellate proceeding.

We therefore conclude that the Respondent trial judge was vested with discretionary authority in refusing to fix the amount of undertaking to stay the effectiveness of the temporary injunction.

■ Mandamus will not lie to compel performance of a power, exercise of which lies in discretion of officer against whom writ is sought, unless action of officer is capricious, arbitrary, or unreasonable. *Board of County Commissioners of Nowata County v. Price,* Okl., 385 P.2d 479 (1963).

Nothing herein written is to be construed in any manner as indicative of the result of the merits appeal to be determined by separate opinion, under separate number.

ORIGINAL JURISDICTION ASSUMED. PETITION FOR WRIT OF MANDAMUS DENIED. STAY DENIED.

WILLIAMS, C. J., and DAVISON, IRWIN, BARNES and SIMMS, JJ., concur.

HODGES, V. C. J., LAVENDER, and DOOLIN, JJ., and BLISS, Special Judge, dissent.

LAVENDER, Justice (dissenting):

I respectfully dissent to the majority views promulgated this date. My views are as follows:

In this case the transcript of the trial court's ruling shows that he did not consider any "irreparable" damage to the University of Oklahoma, but only such damages as it appeared would affect the individual assistant coaches involved—the ones who would have to be released if the temporary injunction was allowed to be stayed by posting of a supersedeas bond. In view of this, it appears to me that the assistant coaches could adequately be compensated

in money what they would lose by having their contracts of employment terminated. There being nothing for the trial court to base its finding of "irreparable" loss to the assistant coaches, the court abused its discretion in not allowing the supersedeas bond as called for by the provisions of 12 O.S.1971, § 993(c).

I don't think that the argument that the injunction preserves the status quo and to allow it to be superseded would change the status (the Del City case) is well taken. Here, the pertinent "status quo" was the status as it existed immediately after the rule limiting the number of coaches was announced by the N.C.A.A.—in other words, August, 1975. That rule limited the number of assistant coaches to eight. After that, the University re-employed the two assistant coaches whose jobs are now in jeopardy. The University by its unilateral act altered the status quo simply because it did not believe the N.C.A.A. rule to be valid. There was no attempt by the University, before re-employing the additional coaches, to test the validity of the N.C.A.A. rule. It does not comport with equitable principles to allow one party to a contract to make a unilateral determination that it will not abide by its contract and then assert this changed position as the "status quo" which it asks a court of equity to preserve until it is decided whether it was right in not abiding by the contract. The contract I am talking about is the one between the University and N.C.A.A. Whether the University of Oklahoma was right in not abiding by the contract is not now before us.

It is my view that the court should assume jurisdiction and issue its writ of mandamus directed to the respondent district judge directing him to follow 12 O.S. 1971, § 993(c), and upon the posting of the bond authorized by the statute, to stay the effect of the judge's temporary injunction.

I am authorized to state that HODGES, V. C. J., and DOOLIN, J., join in the views herein expressed.