2014 OK 48

**OKLAHOMA PUBLIC EMPLOYEES ASSOCIATION, Plaintiff/Appellee,**

v.

**OKLAHOMA MILITARY DEPT., Defendant/Appellant.**

**No. 111463.**

Supreme Court of Oklahoma.

June 10, 2014.

---

Kevin R. Donelson and Kelsie M. Sullivan, Fellers, Snider, Blankenship, Bailey, Tippins, P.C., Oklahoma City, OK, for Plaintiff/Appellee.

Susan E. Werner, Assistant Attorney General, Oklahoma City, OK, for Defendant/Appellant.

COMBS, J.

¶1 We granted certiorari to consider the Oklahoma Court of Civil Appeals' decision to reverse the trial court's order granting a temporary injunction against the Defendant/Appellant, the Oklahoma Military Department ("Department"), and the trial court's order overruling the Department's motion for new trial and to vacate the temporary injunction.[1] The trial court temporarily restrained and enjoined the Department from making pay increases conditioned upon leaving the classified service.

¶2 The record reflects the Department has approximately 330 state employees, of which 128 are in the classified service. Among the classified employees, some are permanent classified employees and some are probationary classified employees. Permanent classified employees are those who have completed their probationary period (one year) and therefore acquired the right to appeal involuntary demotion, suspension without pay, and discharge to the Oklahoma Merit Protection Commission. Title 74 O.S. 2011, §§ 840–1.3(21) and 840–4.13(D). Probationary classified employees are those appointed employees who have been in the classified service for less than one year. Title 74 O.S.2011, § 840–4.13(D). Such probationary classified employees "may be terminated at any time during the probationary period without the right of appeal." *Id.*

¶3 In 2011, 44 O.S.2011, § 21.1 was amended to require personnel appointed as state employees in the Department to be in the unclassified service and to provide additional leave flexibility.[2] To coincide with this

---

1. On December 17, 2012, the Department filed a Motion for New Trial and to Vacate Temporary Injunction. A court minute was entered on January 18, 2013, overruling the Motion for New Trial and to Vacate Temporary Injunction. On February 25, 2013, the trial court memorialized its order but only overruled the Department's "Motion to Vacate" without mentioning the Department's request for new trial. We assume the trial court was also overruling the Department's motion for new trial because of the court minute.

2. Title 44 O.S.2011, § 21.1 provides: "[p]ersonnel appointed as state employees in the Military Department shall be in the unclassified service of the state. The Adjutant General may grant leave to state civilian employees consistent with the rules governing the federal workforce in support of the National Guard."

Prior to this amendment and since its inception in 1990, this section provided:

Personnel appointed as state employees in the Military Department shall be in the classified service of the state, except as otherwise provided by law, and shall be subject to the provisions of the Oklahoma Personnel Act concerning appointments, promotions, adverse actions, and all other personnel matters. However, the Adjutant General may establish a requirement for membership in the National Guard as a

amendment, the Department issued new policies on hiring, promotions and salary administration. The new policy references 74 O.S. 2011, § 840–4.2(C), which provides existing classified employees may remain in the classified service when a classified position has been placed in the unclassified service.[3] Section 7 of the new policy indicates this choice is only applicable to permanent classified employees. It also provided that permanent classified employees may choose to move to the unclassified service after submitting a written resignation from their classified position. Any future vacancies will be filled exclusively in the unclassified service.

¶ 4 Section 6 of the new policy provided for the treatment of probationary classified employees. It placed all probationary classified employees in the unclassified service effective November 1, 2011. It further provided for a five percent (5.0%) pay increase upon completion of one (1) year of service, given supervisor approval and available funding.

¶ 5 Section 13 of the policy entitled "Approved Pay Increases and Promotions" provides "[a]ll promotions will be in the unclassified service." This section does not specifically provide for pay increases for classified employees.

¶ 6 The record reflects in late August 2012 a series of e-mails by the Department: were sent detailing which classified employees would be eligible for a raise. The e-mails indicate a performance-based adjustment of five percent (5.0%) would be granted to those permanent classified employees who had received "exceeds standards" on their annual personal progress report.[4] However, an additional condition excluded from the raise all permanent classified employees who did not elect to resign from the classified service and enter the unclassified service. These classified employees were required to submit their resignation letters by August 30, 2012, in order to accept the offer.

¶ 7 On September 10, 2012, the Plaintiff/Appellee, the Oklahoma Public Employees Association[5] ("OPEA"), on behalf of some of the Department's affected permanent and probationary classified employees, filed a petition for declaratory judgment and injunctive relief. The OPEA's primary assertions were as follows:

(1) the amendments to 44 O.S.2011, § 21.1 are facially unconstitutional because they violate Article V, § 57 of the Oklahoma Constitution by not re-enacting and publishing at length 74 O.S.2011, § 841.30

special requirement for appointment to, and continued employment in, certain positions in the classified service which require special military training, exercise of command authority, direct specified military programs, or perform other functions directly related to administration and training of the National Guard or the maintenance or repair of National Guard facilities, equipment, or supplies. Such designated positions shall include the specified military grade or grades authorized by the Adjutant General for appointment to the position and continued employment therein. An employee in a designated position who is separated from the National Guard or who does not hold the specified military grade for the position will be reclassified, promoted, demoted, transferred or separated in accordance with the provisions of the Oklahoma Personnel Act and the Merit Rules for Employment.
44 O.S. Supp.1990, § 21.1; added by Laws 1990, HB 2328, 1990 Okla. Sess. Laws c. 258, § 2 (eff. July 1, 1990).

3. Title 74 O.S.2011, § 840–4.2(C) provides:

C. Any classified employee who is serving in a position on the effective date of the removal of the position from the classified service and

placement into the unclassified service shall have the option of retaining the employee's classified status. Any such employee who elects to change from classified to unclassified status shall so indicate in writing. If the employee chooses to remain in the classified service, the position occupied by the employee shall remain in the classified service until the employee either vacates the position or elects unclassified status. All future appointees to such positions shall be in the unclassified service.

4. Brigadier General Robbie Asher testified on behalf of the Department that the Adjutant General had determined an "exceed standards" criteria would be used this year for promotions and pay raises. (Tr. of the hearing held September 13, 2012, pg. 36, lines 16–21).

5. The Oklahoma Public Employees Association is a not-for-profit corporation organized and existing under the laws of the State of Oklahoma and comprised of state employees and taxpaying citizens of Oklahoma. The members of the OPEA are employed as classified and unclassified employees under the Oklahoma Personnel Act, 74 O.S. §§ 840–1.1 et seq.

which concerns the process for an agency to request declassification of its employees, (2) the probationary classified employees were denied due process by being automatically placed in the unclassified service without notice and opportunity to be heard, (3) the affected employees are being denied equal protection under the Fourteenth Amendment of the United States Constitution and under the Oklahoma Constitution by being treated differently from other similarly situated state employees because no other classified employees have been given the ultimatum to declassify or be denied all statutorily conferred benefits and job status as provided under the Oklahoma Personnel Act ("OPA"), 74 O.S.2011, §§ 840–1.1 through 840–6.9, (4) the Department is violating the OPA because 74 O.S.2011, § 840–4.2 states probationary employees may obtain permanent status in the classified service after twelve (12) months and the Department automatically denied them permanent classified status by declassifying them and placing them in the unclassified service prior to their obtaining permanent classified status, (5) title 74 O.S.2011, § 840–2.17 provides the circumstances in which salaries can be increased and it does not provide for conditioning a pay increase on forfeiture of classified status, and (6) the Department's policy forcing affected employees into the unclassified service violates the goal of the OPA, which is to, among other things, provide reasonable protection and security for those who have entered and will enter into the service of the state, provide procedures for advance-

ment and career development, and to treat all employees fairly and equally.[6]

The Petition sought the following: (1) a declaration that the amendments to 44 O.S.2011, § 21.1 were facially unconstitutional, (2) the Department's retroactive enforcement and application of the amendments be found unconstitutional, (3) a permanent injunction prohibiting reclassification of affected employees, (4) a permanent injunction mandating affected employees need not forfeit their classified status as a condition of receiving salary increases, (5) a permanent injunction mandating that those probationary classified employees eligible to receive permanent classified status be given a fair opportunity to do so and/or notice and an opportunity to be heard in the event classified status is denied, and (6) attorney fees and costs.

¶ 8 Simultaneously, the OPEA filed a motion for temporary restraining order and temporary injunction. It argued a temporary injunction was necessary to preserve the controverted matter in status quo pending the outcome of the case. Citing *National Collegiate Athletic Ass'n v. Owens*, 1976 OK 136, ¶ 15, 555 P.2d 879, 881. The OPEA also asserted it had met the four factor test to determine if a temporary injunction is proper.

¶ 9 This four factor test was most recently relied upon by this Court in *Dowell v. Pletcher*, 2013 OK 50, ¶ 7, 304 P.3d 457, 460 (citing *Daffin v. State ex rel. Oklahoma Dept. of Mines*, 2011 OK 22, 251 P.3d 741). Therein we held:

> To obtain a preliminary injunction, a plaintiff must show that four factors weigh in his favor: 1) the likelihood of success on the merits; 2) irreparable harm to the party seeking injunction relief if the in-

6. Title 74 O.S.2011, § 840–1.2 states the purpose of the Oklahoma Personnel Act is as follows:

It is the purpose of this act to protect the public from improper use of authority, to protect public officials and employees from unwarranted assaults on their integrity and to enforce the protections for classified employees and citizens under the Merit System of Personnel Administration. It is further the general purpose of this act to establish for the state a system to recruit, select, develop and maintain an effective and responsive work force; to provide for administrative flexibility

and adequate and reasonable protection and security for those who have entered and will enter into the service of the state; to provide for the preservation and protection of the Merit System; and to provide policies and procedures for the selection, hiring, retention, advancement, career development, job classification, salary administration, discipline, discharge and other related activities, all in accordance with principles of merit and fitness and equal employment opportunity, and to maintain a high level of morale, motivation and productivity among state employees.

junction is denied; 3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and 4) the injunction is in the public interest.

¶ 10 At the trial court level, the OPEA first asserted it is likely to prevail upon the merits of its claims because: (1) the Department's action refusing any opportunity for a pay increase to those who do not declassify is not authorized under the OPA, (2) the amendments to 44 O.S.2011, § 21.1 do not provide for retroactive application, i.e., they do not provide for forcing current classified employees into the unclassified service, and (3) the Department's attempt to retroactively declassify the affected employees violates their constitutional rights.

¶ 11 Next, the OPEA argued affected employees would suffer immediate and irreparable injury, loss and damages if the Department were permitted to continue with its current policy regarding compensation and classification of its employees. The OPEA quoted from our decision in *Hines v. Independent Sch. Dist. No. 50, Grant County*, 1963 OK 85, ¶ 14, 380 P.2d 943, 945 (*citing Baker v. Lloyd*, 1947 OK 12, 198 Okla. 512, 179 P.2d 913) wherein we said "[i]njury or detriment is irreparable when it is incapable of being fully compensated for in damages or where the measure of damages is so speculative that it would be difficult if not impossible to correctly arrive at the amount of damages." The OPEA asserted the Department's policy seeks to divest the affected employees of their right to receive salary increases and promotions but also their statutorily conferred rights as classified employees under the OPA and nothing in the OPA allows for the Department to make such salary increases and promotions contingent upon declassification. The OPEA also asserted the probationary classified employees were denied due process when their classified status was automatically stripped without notice or a hearing. The OPEA essentially argues the Department is coercing its classified employees to declassify and lose the rights conferred under the OPA, and such harm is immeasurable.

¶ 12 In balancing the equities of the parties, the OPEA asserted the harm to the Department is minimal, if not non-existent, yet the harm to classified employees from declassification is irreparable. The OPEA contended the public interest would be best served by granting the requested relief because: (1) the purpose of the act is lost if the Department is allowed to coerce classified employees to declassify by withholding benefits to which they are entitled, (2) negative retention and morale will occur if the very protections afforded by the OPA to classified employees are stripped away, and (3) the services provided by the affected employees include security, fire and safety functions, and loss of personnel at this level will have a detrimental effect on the public. Therefore, the OPEA asserted the public interest would be negatively impacted if the Department was not restrained from declassifying its employees.

¶ 13 On September 13, 2012, the trial court held a hearing on the motion for temporary restraining order and temporary injunction. The trial court found the OPEA had met the four factor test and granted a temporary restraining order and temporary injunction. The trial court further determined it lacked authority to order raises but it could order they not be based on classified status. On September 28, 2012, the Department filed an Answer to the Petition for Declaratory Judgment and Injunctive Relief and denied that the OPEA was entitled to the relief sought in its petition. Thereafter, on December 6, 2012, the court memorialized its order on the motion for temporary restraining order and temporary injunction. The trial court determined the OPEA had "sufficiently established the four factors for issuance of a Temporary Restraining Order and Temporary Injunction" and further held:

IT IS HEREBY ORDERED that Defendant, Oklahoma Military Department shall be restrained and enjoined from: (1) requiring employees to resign their classified status in order to obtain a raise; and [making] (2) an employee's raise or pay increase based solely upon such employee's status as a classified or unclassified employee.

¶ 14 On December 17, 2012, the Department moved for a new trial and to vacate the

temporary injunction. It asserted the OPEA had not met the four factors for granting a temporary injunction, namely, it did not prove its likelihood of success on the merits, nor that there was irreparable harm present. The Department claimed the potential harm at issue was the loss of a pay raise which can be readily calculated and is thus not immeasurable. Further, the Department argued the injunction is against public policy because the OPEA does not represent all of the diverse interests here. Specifically, it argued, some employees may desire to be outside the restrictive classification system. Additionally, the Department claimed the OPEA lacks standing because its position may not be acceptable to all its members. The trial court overruled the motion for new trial and to vacate the temporary injunction on February 25, 2013. The Department appealed the order granting temporary injunction and the order denying the motion for new trial and to vacate the temporary injunction.

## STANDARD OF REVIEW

¶ 15 The purpose of a temporary injunction is to preserve the status quo and prevent the perpetuation of a wrong or the doing of an act whereby the rights of the moving party may be materially invaded, injured or endangered. *Sharp v. 251st Street Landfill, Inc.*, 1991 OK 41, ¶ 21, 810 P.2d 1270, 1276–1277. A temporary injunction protects a court's ability to render a meaningful decision on the merits of the controversy. *Id.* The application for temporary injunction is addressed to the trial court's discretion and its ruling will not be disturbed on appeal absent a clear showing of error, either legal or factual, or an abuse of discretion. *Id.* at ¶ 24. Further, trial courts are vested with broad legal discretion to grant or deny a new trial, and unless it clearly appears the trial court erred in some pure simple question of law or acted arbitrarily, its judgment will not be disturbed on appeal.

*Dominion Bank of Middle Tennessee v. Masterson*, 1996 OK 99, ¶ 16, 928 P.2d 291, 294.

## ANALYSIS

¶ 16 The Oklahoma Court of Civil Appeals determined the OPEA had standing to bring this action and there was no violation of Article 5, § 57 of the Oklahoma Constitution.[7] No petition for certiorari alleged these rulings were made in error and therefore the Oklahoma Court of Civil Appeals' determination will be the law of the case on these issues. *See Jackson v. Jones*, 1995 OK 131, ¶ 12, 907 P.2d 1067, 1074.

¶ 17 The Department's primary assertion on appeal is that the trial court abused its discretion by finding the OPEA had established the four (4) requisite factors for granting a temporary injunction. The Oklahoma Court of Civil Appeals found the OPEA was not likely to succeed on the merits, the first factor, and therefore reversed the trial court's orders granting the temporary injunction and denying the Department's motion for new trial and remanded the matter to the trial court. The Oklahoma Court of Civil Appeals did not address the other three factors.

## I. THE FIRST REQUISITE FACTOR FOR GRANTING A TEMPORARY INJUNCTION: LIKELIHOOD OF SUCCESS ON THE MERITS

¶ 18 The OPEA primarily asserts the Department's policies violated the affected employees' constitutional rights to due process of law and equal protection, and the OPA does not provide for pay increases conditioned upon declassification.

### A. Due Process of Law

¶ 19 The OPEA argues the Department's policy deprives classified employees of their property interest in continued employment

---

7. Okla. Const., art. 5, § 57 provides in pertinent part: "no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length...." The OPEA asserted when 44 O.S.2011, § 21.1, was amended it indirectly amended 74 O.S.2011, § 841.30. Section 841.30 establishes a procedure for agencies to request unclassified employee positions. The OPEA argued because the bill that amended 44 O.S.2011, § 21.1, did not re-enact and republish 841.30, it violated Okla. Const. art. 5, § 57.

by effectively forcing them to relinquish their property interest in order to receive promotions and pay raises. Both the state and federal constitutions prohibit the deprivation of life, liberty or property without due process of law. United States Constitution, Fourteenth Amendment; Oklahoma Constitution, art. 2, § 7. Here, in order to determine if a right to due process has been violated, it is necessary to first determine whether or not a property right exists.

¶ 20 The United States Supreme Court has held if an employee has a property interest in continued employment, the government may not deprive the employee of that property without due process of law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). The Court also determined property interests are not created by the Constitution but by an independent source, such as state law. *Id.* Under the OPA, permanent classified employees may be discharged for any just cause but must be given notice of the specific acts or omissions that are the causes or reasons for the proposed action, an explanation of the agency's evidence, and an opportunity to present reasons why the proposed action is improper. Title 74 O.S.2011, § 840–6.5(C). Section 840–6.5(C) further provides a right to appeal a discharge to the Oklahoma Merit Protection Commission. This Court has also previously determined classified employees are not at-will employees. *McCrady v. Oklahoma Dep't of Pub. Safety*, 2005 OK 67, ¶ 10, 122 P.3d 473, 475. Because of such protections afforded permanent classified employees, we hold a property interest in continued employment exists that may not be deprived without due process of law.

## 1. Probationary Classified Employees

¶ 21 This property right, however, does not extend to probationary classified employees, who are a distinct type of classified employees. Probationary classified employees do not have a property right in their continued employment because the OPA specifically denies that right until these employees reach permanent status. Title 74 O.S. 2011, § 840–4.13(D) provides, "[t]he proba-

tionary appointment of any person may be terminated at any time during the probationary period without the right of appeal." It is clear from the statutory language that the Legislature did not intend to confer a property right on probationary classified employees. Therefore, the effective termination and rehiring of probationary classified employees in the unclassified service did not violate those employees' rights to due process of law.

## 2. Permanent Classified Employees

¶ 22 We also hold the permanent classified employees' due process rights were not violated. The amendments to 44 O.S.2011, § 21.1 were only applied prospectively and did not affect current classified employees. Title 74 O.S.2011, § 840–4.2, which allows classified employees to remain in the classified service if a position is declassified, was left intact after the amendments to 44 O.S. 2011, § 21.1. Only future appointments to those positions would be in the unclassified service. Further, the Department's policy also referred to the provisions of Title 74 O.S.2011, § 840–4.2.

## Conclusion

¶ 23 We hold the only property interest provided by the OPA is in continued employment for permanent classified employees. This property interest cannot be taken away without due process of law. However, the permanent classified employees were not forced to leave the classified service and they remain under the Merit System and continue to have Merit System protection. Therefore, the rights of the permanent classified employees to due process of law were not infringed.

## B. Equal Protection

¶ 24 The OPEA additionally asserts the classified employees are being deprived of equal protection of the law by being treated differently from similarly situated classified employees. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates no state shall "deny to any person within its jurisdic-

tion the equal protection of the laws." [8] Although not an absolute guarantee of equality of operation or application of state legislation, the purpose of the Equal Protection Clause is to safeguard against arbitrary discrimination.[9]

¶ 25 An equal protection analysis requires strict scrutiny of a legislative classification only when such classification impermissibly interferes with the exercise of a fundamental right, such as the right to vote, right of interstate travel, rights guaranteed by the First Amendment, or right to procreate; or operates to the peculiar disadvantage of a suspect class, such as one based upon alienage, race, or ancestry.[10] Unless a classification warrants some form of heightened review, the Equal Protection Clause only requires the classification rationally further a legitimate state interest.[11]

¶ 26 The OPEA has not shown that any fundamental rights have been infringed in this matter or that the affected employees are members of a suspect class. Therefore, the lower threshold, identified as the rational-basis test, is the correct standard for an equal protection analysis. Classifications are not measured by whether they discriminate, but by whether they discriminate impermissibly or invidiously. *Ross v. Peters,* 1993 OK 8, ¶ 20, 846 P.2d 1107, 1117. We have held, "[w]here a legitimate state purpose is achieved via a statutory means that does not violate the relatively relaxed standard of minimal rationality, the classification scheme passes constitutional muster." *Id.*

¶ 27 The Department's testimony at the hearing on the motion for temporary restraining order and temporary injunction explains the rationale for wanting to encourage classified employees to enter the unclassified service. Brigadier General Robbie Asher, Director of the Joint Staff for the Department, testified concerning the need for flexibility and how declassifying employees would allow the Department to transfer employees to different positions as needed. His testimony indicates this ability directly affects the Department's readiness to respond to protect the public security. From a purely equal protection analysis, we hold this alone serves as a rational basis for the Department's policy of encouraging employees to declassify by giving a raise to those who do. Employees who declassify are also losing the protections of the Merit System and it is rational to compensate them for that loss. We therefore hold the affected employees' rights to equal protection have not been violated.

## C. AUTHORIZATION FOR A CONDITIONAL RAISE BASED UPON DECLASSIFICATION

¶ 28 The OPEA also argued the OPA does not provide for conditional raises based upon declassification. The Department asserted the manner in which raises are made is a discretionary matter for the Adjutant General. This issue was not specifically addressed in the Oklahoma Court of Civil Appeals' opinion. We agree and find the OPA does not provide for such a conditional raise. Title 74 O.S. Supp.2012, § 840–2.17 of the OPA is a very restrictive law regarding salary adjustments. The current version is essentially the same version in effect during the periods relevant to this matter. This section provides as follows:

A. **Unless otherwise provided by the Oklahoma Constitution, language in law** which authorizes the setting or fixing of compensation, pay or salary of state officers and employees **shall not be construed to authorize** any agency, board, commission, department, institution, bu-

---

8. U.S. Const. amend. XIV, § 1. "When called upon to analyze a case on equal protection grounds, a court will apply one of three standards of review; (a) rational basis, (b) heightened scrutiny, or (c) strict scrutiny. If the classification does not implicate a suspect class or abridge a fundamental right, the rational-basis test is used." *Gladstone v. Bartlesville Independent School District No. 30,* 2003 OK 30, ¶ 9 n. 22, 66 P.3d 442, 447 n. 22).

9. *Ross v. Peters,* 1993 OK 8, ¶ 17, 846 P.2d 1107, 1114.

10. *Gladstone v. Bartlesville Independent School District No. 30,* 2003 OK 30, ¶ 9, 66 P.3d 442, 447.

11. *Ross* at ¶ 17.

reau, executive officer or other entity of the executive branch of state government to award, grant, give, authorize, or promise any officer or employee of the State of Oklahoma **a raise,** including, but not limited to, a cost-of-living raise or any other type of raise that would be given to state employees on an across-the-board basis, *except as herein provided.* **Such raises are** *prohibited* **unless authorized by the Legislature and by Merit System of Personnel Administration Rules** promulgated by the Director. **This prohibition applies to all classified and unclassified officers and employees** in the executive branch of state government, excluding institutions under the administrative authority of the Oklahoma State Regents for Higher Education.

B. **However, nothing in this section shall be construed to prohibit the following actions** if the action is made in good faith and not for the purpose of circumventing subsection A of this section, and if the appointing authority certifies that the action can be implemented for the current fiscal year and the subsequent fiscal year without the need for additional funding to increase the personal services budget of the agency:

1. Salary advancements on promotion or direct reclassification to a job family level or class with a higher salary band;

2. Salary adjustments resulting from a pay band change for a job family level or class adopted by the Office of Management and Enterprise Services;

3. Increases in longevity payments pursuant to Section 840–2.18 of this title;

4. Payment of overtime, special entrance rates, pay differentials;

5. Payment of wages, salaries, or rates of pay established and mandated by law;

6. Market adjustments for job family levels tied to market competitiveness;

7. Intra-agency lateral transfers, provided that the adjustment does not exceed five percent (5%) and the adjustment is based on the needs of the agency;

8. Skill-based adjustments. Such adjustments, which are implemented before November 1, 2006, other than lump-sum payments, shall become permanent after twenty-four (24) months from the date such salary adjustment is implemented and may not later be removed from an employee's base salary if a furlough or reduction-in-force is implemented by the appointing authority granting such salary adjustment. Skill-based pay adjustments, which are implemented on or after November 1, 2006, and which are paid to an employee, shall be paid as long as the employee remains employed in the position and performs the skills for which the differential is due, but shall not be included as a part of the employee's base salary;

9. Equity-based adjustments;

10. **Performance-based adjustments for employees who received at least a "meets standards" rating on their most current performance rating;**

11. Career progression increases as an employee advances through job family levels; or

12. Salary adjustments not to exceed five percent (5%) for probationary classified employees achieving permanent status following the initial probationary period and permanent classified employees successfully completing trial periods after intra-agency lateral transfer or promotion to a different job family level or following career progression to a different job family level.

C. Provided, however, any reclassification for one of the purposes provided in subsection B of this section that would require additional funding by the Legislature shall not be implemented without approval of the Legislature.

D. The pay movement mechanisms described in paragraphs 6 through 11 in subsection B of this section shall be implemented pursuant to rules promulgated by the Director of the Office of Management and Enterprise Services for the classified service.

E. Appointing authorities may implement the pay movement mechanisms in paragraphs 6 through 12 in subsection B of this section subject to the availability of funds within the agency's budget for the current

fiscal year and subsequent fiscal year without the need for additional funding to increase the personal services budget of the agency. Failure by the appointing authority to follow the provisions of this subsection may cause the withdrawal of the use of the pay movement mechanisms provided in paragraphs 6, 7, 9, 10 and 11 of subsection B of this section within the agency during the next appropriations cycle.

F. The provisions in subsection B of this section shall not apply to chief executive officers of any agency, board, commission, department or program except for paragraphs 3 and 5 of subsection B of this section.

*(Emphasis added)*

¶ 29 The legislative intent is clear. Salary adjustments may only be granted by the Legislature and by the Merit System of Personnel Administration Rules promulgated by the Director or as allowed by the Oklahoma Constitution. The exceptions are listed in subsection B. The record reflects the raises provided by the Department were largely "performance-based" adjustments. Title 74 O.S. Supp.2012, § 840–2.17(B)(10) provides:

B. However, nothing in this section shall be construed to prohibit the following actions . . .

10. Performance-based adjustments for employees who received at least a "meets standards" rating on their most current performance rating;

The Department chose to grant raises to permanent classified employees based upon an "exceed standards" rating with **the extra condition** that such employees must also leave the classified service. The Merit System of Personnel Administration Rules allow for a performance-based adjustment to be made on an overall rating better than "meet standards," i.e., "exceed standards." Okla. Admin. Code 530: 10–7–27(a).[12] However, 74 O.S. Supp.2012, § 840–2.17 does not provide authorization for a conditional raise based upon declassification. The Department is correct in its assessment that how raises are awarded is a discretionary matter that lies with the Adjutant General. However, such discretion must still fall within the scope established by statute. We find no authority in the very restrictive language of 74 O.S. Supp.2012, § 840–2.17 that allows an appointing authority to condition pay raises upon declassification. Additionally, the Merit System of Personnel Administration Rules provide an appointing authority must certify that its performance-based adjustment plan "provides for uniform treatment of all permanent classified employees of the agency who achieve a 'meets standards' or 'exceeds standards' " rating. Okla. Admin. Code 530:10–7–27(c)(4) (*See supra* note 12). **This rule indicates performance-based raises for permanent classified employees are to be uniformly granted.** That is not consistent with the Department's policy of granting performance-based raises to only those permanent classified employees who declassify.

¶ 30 The trial court's order granting the temporary injunction did not make specific findings as to why the OPEA had established each of the four (4) requisite factors for granting a temporary injunction. Although we hold the OPEA's constitutional challenges to the Department's policies do not show a likelihood of success on the merits, we cannot

---

12. Okla. Admin. Code 530:10–7–27 provides in pertinent part:

(a) Performance-based adjustments enable Appointing Authorities to award a salary increase or lump sum payment to employees who have achieved an overall rating of "meets standards" or better on their most recent performance evaluation. This performance evaluation shall be conducted with the standard performance management system provided by 530:10–17–31.

. . . .

(c) In order to adopt a performance-based adjustment program, an Appointing Authority must submit a written performance-based adjustment plan to the Administrator for approval. The plan must:

. . . .

(4) Include certification by the Appointing Authority that the agency can fund the performance-based adjustment program for the current and subsequent fiscal year without the need for additional funding, and that the plan provides for uniform treatment of all permanent classified employees of the agency who achieve a "meets standards" or "exceeds standards" except as provided in subsection (e). The Appointing Authority shall not delegate authority to sign certification; and

say the trial court's ruling was an abuse of discretion in light of the fact the OPA does not provide for conditional raises based upon declassification.

## II. THE REMAINING THREE REQUISITE FACTORS FOR GRANTING A TEMPORARY INJUNCTION:

¶ 31 The Oklahoma Court of Civil Appeals did not address the remaining three requisite factors for granting a temporary injunction. These three factors are: 1) irreparable harm to the party seeking injunctive relief if the injunction is denied; 2) the threatened injury outweighs the injury the opposing party will suffer under the injunction; and 3) the injunction is in the public interest. *Daffin v. State ex rel. Oklahoma Dept. of Mines*, 2011 OK 22, 251 P.3d 741. Pursuant to Rule 1.180 of the Oklahoma Supreme Court Rules, upon vacating an opinion of the Oklahoma Court of Civil Appeals, this Court may address all properly preserved and briefed issues not addressed by the Oklahoma Court of Civil Appeals or we may remand the cause to the Oklahoma Court of Civil Appeals to address such issues. For judicial expediency we choose to address the other three factors and determine whether the trial court abused its discretion by finding the OPEA had established such factors and issuing the temporary injunction.

### A. IRREPARABLE HARM

¶ 32 In its brief in chief, the Department argued the trial court abused its discretion by finding the second requisite factor had been established. The Department asserts the issue concerning a pay increase and potential loss of increased income falls short of the type of irreparable injury which is a necessary predicate to issue a temporary injunction. *Sampson v. Murray*, 415 U.S. 61, 91–92, 94 S.Ct. 937, 953–54, 39 L.Ed.2d 166 (1974). The Department contended the damages accrued by a loss in raises or even a loss of employment are not irreparable but may be remedied through money damages. However, the loss of income is not the only injury that will be sustained by affected employees. Those affected employees who declassify would also lose their rights under the Merit

Protection System. It is this loss which is irreparable.

¶ 33 For purposes of the OPEA's constitutional challenges we have already determined permanent classified employees were not forced to declassify and thus were not forced to give up a property interest in continued employment without due process of law. However, some classified employees may have seen the *writing on the wall* and grudgingly declassified in order to receive raises and the potential for future promotions. The record reflects at least one classified employee reluctantly declassified in order to receive the raise. If the Department's unauthorized actions of conditioning raises upon declassification caused even one classified employee to declassify, thereby suffering irreparable harm, we are reluctant to find the trial court abused its discretion. Once an employee leaves the classified service that employee is no longer protected by the Merit System. There is no mechanism for that employee to regain that protection, taking into consideration the amendments to 44 O.S.2011, § 21.1, which makes the position unclassified for all future appointments. Therefore, the loss of the Merit System protection is irreparable. We therefore find the trial court did not abuse its discretion in finding the OPEA had established irreparable harm.

### B. THE THREATENED INJURY OUTWEIGHS THE INJURY TO THE OPPOSING PARTY UNDER THE INJUNCTION

¶ 34 The imposition of the unauthorized conditional raise has caused irreparable harm to those who reluctantly declassified and lost the protections of the Merit System. We find no clear harm in the record that the Department will suffer if it is temporarily enjoined from implementing an unauthorized conditional raise. Therefore, we find no abuse of discretion in the trial court's finding that the third requisite factor for granting a temporary injunction had been established.

### C. THE INJUNCTION IS IN THE PUBLIC INTEREST

¶ 35 The OPEA asserts the public interest is served by the injunction which

will preserve the purpose of the OPA. The purpose of the OPA is "to protect the public from improper use of authority, to protect public officials and employees from unwarranted assaults on their integrity and to enforce the protections for classified employees...." Title 74 O.S.2011, § 840-1.2. In addition, its purpose is "to maintain a high level of morale, motivation and productivity among state employees." *Id.* The OPEA argued the Department's actions will have a negative impact on employee retention and morale. Further, the OPEA asserts the affected employees provide security, fire and safety services to our military bases and the loss of personnel at this level will have a detrimental effect on the public. The Department argues an important public policy is being served by the Department's policy. The policy allows the Department to have the necessary flexibility to quickly respond to the needed services it provides to the citizens of Oklahoma. As to this fourth requisite factor for granting a temporary injunction, we cannot say the trial court's findings constituted an abuse of discretion. The parties have shown competing public interests well within the trial court's ability to weigh.

## CONCLUSION

¶ 36 On December 6, 2012, the trial court memorialized its September 13, 2012, temporary restraining order and temporary injunction, restraining and enjoining the Department from: "(1) requiring employees to resign their classified status in order to obtain a raise; and (2) [making] an employee's raise or pay increase based solely upon such employee's status as a classified or unclassified employee." The trial court determined the OPEA had established all four (4) requisite factors for issuance of the temporary injunction and temporary restraining order.

¶ 37 The first provision of the trial court order restrains and enjoins the Department from: "(1) requiring employees to resign their classified status in order to obtain a raise." We hold the trial court did not abuse its discretion in restraining and enjoining the Department from conditioning pay increases on declassification of permanent classified

employees. We do, however, reverse the trial court's order as far as this provision of the order is applicable to probationary classified employees. We hold the OPA does not provide the same protection to probationary classified employees as it does for permanent classified employees and the Department's actions concerning the probationary classified employees appear consistent with the OPA.

¶ 38 The second provision of the trial court order restrains and enjoins the Department from: "[making] (2) an employee's raise or pay increase based solely upon such employee's status as a classified or unclassified employee." The meaning of this part of the order is unclear. We reverse this part of the trial court's order insofar as this provision could be interpreted to restrain and enjoin the Department from granting pay increases authorized by law. We hold an employee's classification in itself, be it classified or unclassified, does not represent a suspect classification. The Adjutant General has discretion to award pay increases the same as any other appointing authority as long as the increases are authorized by law. We hold here, however, there is no authority to require declassification in order to obtain a pay increase. We further hold the trial court did not abuse its discretion by denying the Department's motion for new trial and to vacate the temporary order.

**THE OKLAHOMA COURT OF CIVIL APPEALS OPINION IS VACATED; THE TRIAL COURT'S DECEMBER 6, 2012, ORDER GRANTING TEMPORARY INJUNCTION IS AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; THE TRIAL COURTS FEBRUARY 25, 2013, ORDER OVERRULING MOTION TO VACATE IS AFFIRMED**

¶ 39 CONCUR: KAUGER, WATT, WINCHESTER, EDMONDSON, COMBS, and GURICH, JJ.

¶ 40 CONCUR IN PART; DISSENT IN PART: COLBERT, C.J. and REIF, V.C.J.

¶ 41 DISSENTS: TAYLOR, J.

¶ 42 TAYLOR, J. dissenting.

I would reverse all orders issued by the trial court.