OSCN Found Document:OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE v. DRUMMOND

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE v. DRUMMOND
2023 OK 111
Case Number: 119918
Decided: 11/14/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 111, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE, on behalf of itself and its members; TULSA WOMEN'S REPRODUCTIVE CLINIC, LLC, on behalf of itself, its physicians, its staff, and its patients; ALAN BRAID, M.D., on behalf of himself and his patients; COMPREHENSIVE HEALTH OF PLANNED PARENTHOOD GREAT PLAINS, INC., on behalf of itself, its physicians, its staff, and its patients; and PLANNED PARENTHOOD OF ARKANSAS & EASTERN OKLAHOMA, on behalf of itself, its physicians, its staff, and its patients, Plaintiffs/Appellants,
v.
GENTNER DRUMMOND, in his official capacity as Attorney General for the State of Oklahoma; VICKI BEHENNA, in her official capacity as District Attorney for Oklahoma County; STEVE KUNZWEILER, in his official capacity as District Attorney for Tulsa County; LYLE KELSEY, in his official capacity as Executive Director of the Oklahoma State Board of Medical Licensure and Supervision; BRET S. LANGERMAN, in his official capacity as President of the Oklahoma State Board of Osteopathic Examiners; KEITH REED, in his official capacity as the Commissioner of the Oklahoma State Board of Health; and JASON WILLEFORD, in his official capacity as the President of the Oklahoma State Board of Pharmacy; as well as their employees, agents, and successors, Defendants/Appellees.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
The Honorable Cindy H. Truong

¶0 The appellants filed an action to permanently enjoin enforcement of five Acts of the Oklahoma Legislature. Each Act concerns the termination of a pregnancy. The appellants' challenges are based upon Oklahoma law and not federal law. They assert there is a constitutional right to terminate a pregnancy under the Oklahoma Constitution. The trial court denied a temporary injunction on three of the Acts, which is the basis of this appeal. We retained this appeal and granted a temporary injunction pending appeal. We now vacate the trial court's order denying temporary injunction, direct it to grant a temporary injunction and remand the matter for further proceedings on the merits.

VACATED AND REMANDED FOR FURTHER PROCEEDINGS; TRIAL
COURT DIRECTED TO GRANT TEMPORARY INJUNCTION; THIS 
COURT'S TEMPORARY INJUNCTION IS LIFTED ONCE THE TRIAL 
COURT'S TEMPORARY INJUNCTION BECOMES EFFECTIVE

J. Blake Johnson, Overman Legal Group, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellant Tulsa Women's Reproductive Clinic, L.L.C.

Kulsoom Ijaz, Rabia Muqaddam, Caroline Sacerdote, and Linda C. Goldstein, Center for Reproductive Rights, New York, New York, for Plaintiffs/Appellants Oklahoma Call for Reproductive Justice, Tulsa Women's Reproductive Clinic, L.L.C., and Alan Braid, M.D.

Meghan Agostinelli, Dechert LLP, Chicago, Illinois, for Plaintiffs/Appellants Oklahoma Call for Reproductive Justice, Tulsa Women's Reproductive Clinic, L.L.C., and Alan Braid, M.D.

Jenna Newmark, Dechert LLP, New York, New York, for Plaintiffs/Appellants Oklahoma Call for Reproductive Justice, Tulsa Women's Reproductive Clinic, L.L.C., and Alan Braid, M.D.

Jerome A. Hoffman, Dechert LLP, Philadelphia, Pennsylvania, for Plaintiffs/Appellants Oklahoma Call for Reproductive Justice, Tulsa Women's Reproductive Clinic, L.L.C., and Alan Braid, M.D.

Jonathan Tam, Dechert LLP, San Francisco, California, for Plaintiffs/Appellants Oklahoma Call for Reproductive Justice, Tulsa Women's Reproductive Clinic, L.L.C., and Alan Braid, M.D.

Diana O. Salgado, Planned Parenthood Federation of America, Washington, DC, for Plaintiffs/Appellants Comprehensive Health of Planned Parenthood Great Plains, Inc. and Planned Parenthood of Arkansas & Eastern Oklahoma.

Mithun Mansinghani, Zach West, Office of Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Defendants/Appellees.

COMBS, J.:

¶1 This opinion addresses only the trial court's denial of a temporary injunction to enjoin the enforcement of three Oklahoma Acts: House Bill 1904, 2021 Okla. Sess. Laws ch. 211 (effective November 1, 2021); Senate Bill 778, 2021 Okla. Sess. Laws ch. 577 (effective November 1, 2021); and Senate Bill 779, 2021 Okla. Sess. Laws ch. 578 (effective November 1, 2021). On September 2, 2021, the appellants - Oklahoma Call for Reproductive Justice; Tulsa Women's Reproductive Clinic, LLC; Alan Braid, M.D.; Comprehensive Health of Planned Parenthood Great Plains, Inc.; and Planned Parenthood of Arkansas & Eastern Oklahoma (Appellants) - petitioned the trial court to find that five Oklahoma Acts relating to abortion were unconstitutional under the due process section of the Oklahoma Constitution (article II, section 7). In addition, they asserted S.B. 778 and S.B. 779 violated the single-subject rule found in article V, section 57 of the Oklahoma Constitution and the Acts were enacted for an improper purpose. The appellants did not assert any federal claims. Contemporaneous with their petition, the appellants filed a motion for a temporary injunction requesting the trial court enjoin enforcement of the Acts. The trial court held a hearing on the motion and filed its order on October 7, 2021. The court granted a temporary injunction on two of the Acts but denied a temporary injunction on H.B. 1904, S.B. 778, and S.B. 779. The appellants have appealed the denial of the temporary injunction on the three Acts. They filed a petition in error on October 13, 2021, and filed a motion for temporary injunction pending appeal in this Court. We retained the appeal and granted their motion for temporary injunction pending appeal on October 25, 2021.[1]

 

STANDARD OF REVIEW

 

¶2 Matters involving the grant or denial of injunctive relief are of equitable concern. Dowell v. Pletcher, 2013 OK 50, ¶5, 304 P.3d 457, 460. Injunction is an extraordinary remedy and relief by this means should not be granted lightly. Id. A temporary injunction protects a court's ability to render a meaningful decision on the merits of the controversy. Okla. Pub. Emps. Ass'n v. Okla. Military Dep't, 2014 OK 48, ¶15, 330 P.3d 497, 504. The purpose of a temporary injunction is to preserve the status quo and prevent the perpetuation of a wrong or the doing of an act whereby the rights of the moving party may be materially invaded, injured, or endangered. Id. Equity courts exercise discretionary power in granting or withholding extraordinary remedies, particularly where injunctive relief is sought, and its granting rests in the sound discretion of the court to be exercised in accordance with equitable principles and in light of all circumstances. Dowell, 2013 OK 50, ¶5, 304 P.3d at 460. The right to injunctive relief must be established by clear and convincing evidence. Id. ¶7, 304 P.3d at 460. To obtain a temporary injunction, a plaintiff must show that four factors weigh in their favor: 1) the likelihood of success on the merits; 2) irreparable harm to the party seeking the relief if the injunction is denied; 3) their threatened injury outweighs the injury the opposing party will suffer under the injunction; and 4) the injunction is in the public interest. Okla. Pub. Emps. Ass'n, 2014 OK 48, ¶9, 330 P.3d at 502-03. Granting or denying injunctive relief is within the sound discretion of the trial court and a judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence. Dowell, 2013 OK 50, ¶¶5-6, 304 P.3d at 460; Sharp v. 251st Street Landfill, Inc., 1996 OK 109, ¶4, 925 P.2d 546, 549. The temporary injunction is not itself a decision on the merits. Edwards v. Bd. of Cty. Comm'rs of Canadian Cty., 2015 OK 58, ¶34, 378 P.3d 54, 64. Neither appellate affirmance nor reversal of an interlocutory injunction decree could, without more, become an adjudication on the merits of the action. Smith v. State ex. rel. Bd. of Regents of Okla. State Univ., 1993 OK 1, ¶7, 846 P.2d 370, 372. Issues resolved at this interim stage are never res judicata of the claim. Id. When they are retendered on trial of the plaintiff's quest for permanent injunction, both parties are free to offer different or additional proof. Id.

ANALYSIS

¶3 The appellants assert they have demonstrated a likelihood of success on the merits concerning their arguments challenging the constitutionality of the three Acts under the Oklahoma Constitution. The constitutionality of the three challenged Acts goes to the merits of the underlying action. Our duty at this interlocutory stage is to review only the trial court's decision denying a temporary injunction and to determine whether the court abused its discretion or the decision was clearly against the weight of the evidence.

¶4 The appellants claim the three Acts violate the Oklahoma Constitution. They do not assert their arguments are based upon the federal Constitution. The appellants assert the Acts place undue burdens on a woman's right to terminate her pregnancy in violation of article II, section 7 of the Oklahoma Constitution, the state due process section. This section provides:

No person shall be deprived of life, liberty, or property, without due process of law.

Therefore, we must first determine whether the Oklahoma Constitution provides a right - or at least some right - to terminate a pregnancy and, if so, what is the appropriate standard for determining when a state regulation violates that right. We recently answered these questions in Oklahoma Call for Reproductive Justice v. Drummond (OCRJ I), 2023 OK 24, 526 P.3d 1123.

¶5 OCRJ I was this Court's first opinion concerning abortion rights following the United States Supreme Court's holding that there was no longer a right to terminate a pregnancy under the federal Due Process Clause. See Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228 (2022). Dobbs held that, in order for a fundamental right to be recognized as a component of the liberty protected in the Due Process Clause, such right must be deeply rooted in our Nation's history and tradition. Id. at 2246, 2260. The Court determined that was not the case when considering abortion had been outlawed in every single state prior to Roe v. Wade, 410 U.S. 113 (1973). Id. at 2248. We determined that if this Court were to adopt the Dobbs analysis we would have to find a limited right to terminate a pregnancy was deeply rooted in Oklahoma's history and tradition. OCRJ I, 2023 OK 24, ¶7. Since the days of the Oklahoma Territory and until Roe, Oklahoma outlawed abortion; however, such criminal statutes also provided a limited exception to allow an abortion if it was "necessary to preserve her life." See Okla. (Terr.) Stat. § 2187 (1890); 12 O.S. 2021 § 861. Id. We found that Dobbs did not account for such exceptions and our history and tradition had long recognized such right. Id. ¶8. This right is protected under Sections 2[2] and 7[3] of Article II of the Oklahoma Constitution. Id. Therefore, we held that the Oklahoma Constitution protects a limited right to an abortion, i.e., one that creates an inherent right of the mother to terminate a pregnancy when necessary to preserve her life. Id. ¶9. This inherent right to preserve the life of the mother was defined to mean: a woman has an inherent right to choose to terminate her pregnancy if, at any point in the pregnancy, the woman's physician has determined to a reasonable degree of medical certainty or probability that the continuation of the pregnancy will endanger the woman's life due to the pregnancy itself or due to a medical condition that the woman is either currently suffering from or likely to suffer from during the pregnancy. Absolute certainty is not required; however, mere possibility or speculation is insufficient. Id. In addition, we held the standard that should be applied when reviewing challenges to state laws affecting the inherent right to preserve the life of the mother is strict scrutiny. Id. ¶11. We made no ruling on whether the Oklahoma Constitution provides a right to an elective termination of a pregnancy. Id. ¶10.

¶6 The appellants assert the three Acts severely and intentionally restrict access to abortions and are unrelated to any purported interest in patient health. H.B. 1904 provides a new requirement that a physician who performs an abortion must be board-certified in obstetrics and gynecology. S.B. 779 requires a physician who is certified to provide an abortion-inducing drug either to have admitting privileges at a hospital in the county or contiguous to the county where the abortion-inducing drug was administered or to have a written agreement with an associated physician in such location. S.B. 778 requires an Ultrasound be performed at least 72 hours prior to providing an abortion-inducing drug, but it does make an exception if such requirement would pose a greater risk of death or impairment. Both S.B. 778 and S.B. 779 provide for criminal and civil penalties for failure to comply with any provision in the Acts. Both Acts have, among other things, stringent reporting requirements. For example, S.B. 778 requires a physician to provide a report within three days of an Adverse Event to the FDA and the state health department, and S.B. 779 has a similar requirement. Failure to comply would appear to be a crime under the Acts and would also expose the physician to potential civil action.

¶7 The appellees assert these Acts are designed to benefit women's health. The parties have provided competing affidavits concerning the safety of medication abortion. The appellants assert research consistently shows that medication abortion is safer than many other common medications, including antibiotic and over-the-counter drugs, like Advil or Tylenol.[4] This Court has previously acknowledged there have been no significant health-related problems with using the current FDA protocol in medication abortion. Okla. Coal. for Reproductive Justice v. Cline, 2019 OK 33, ¶36, 441 P.3d 1145, 1158.

¶8 Under H.B. 1904, the requirement for a board certified OB/GYN to be the only authorized physician capable of performing the procedure would greatly reduce access to patients where such a specialty is not readily available or timely available once the patient's medical team has made a determination that the procedure is necessary to preserve the life of the mother. Any additional delay in access to the procedure once the necessity has been determined is clearly detrimental to the health of the patient and her constitutionally protected right to terminate the pregnancy to preserve her life.

¶9 S.B. 779 requires a physician who is certified to provide abortion-inducing drugs to have admitting privileges at a hospital in the county or contiguous county of where the abortion-inducing drug was provided. In 2016, this Court found such admitting privileges requirements were an impermissible hurdle for women seeking lawful abortion and there was no evidence to persuade this Court that such provisions advance women's health. Burns v. Cline, 2016 OK 121, ¶¶18-19, 387 P.3d 348, 353-54. Having previously determined this requirement to be an impermissible hurdle for women seeking lawful termination of a pregnancy and that there was no evidence to persuade us that such provisions advance women's health, we therefore find such restriction would likely fail under a strict scrutiny review in light of both our decision in OCRJ I and a woman's constitutional right to terminate a pregnancy to preserve her life.

¶10 S.B. 778 requires an ultrasound be conducted 72 hours prior to the day of the abortion. Mandating an ultrasound to be performed 72 hours prior to any procedure that a woman's medical team has already determined is necessary to preserve her life, would increase the risk of harm to the woman and limit her access to necessary and timely healthcare to preserve her life - necessary and timely healthcare for which she has a constitutionally protected right.

¶11 In addition, both S.B. 778 and 779 have stringent reporting requirements and penalties for any violations of the Acts, including criminal sanctions. A violation of the Acts can be the cause for a civil malpractice action for actual and punitive damages, professional disciplinary action, and attorney fee awards. S.B. 779 also requires certification before one can distribute or provide an abortion-inducing drug. The penalties for failure to receive certification equals $5,000,000 per violation for a manufacturer or distributor and $250,000 per violation for a physician. The chilling effect of these new laws is such that no physician would likely risk providing constitutionally protected care for fear of violating these statutes.

¶12 The clear weight of the evidence presented showed the apparent effect of the three Acts would place unnecessary burdens on the lawful termination of a pregnancy and therefore we hold that the trial court erred by not granting the temporary injunction.

CONCLUSION

Currently, we granted a temporary injunction to prevent enforcement of the Acts pending appeal. Maintaining the status quo would further the public interest of protecting a woman's right to terminate a pregnancy in order to preserve her life. The trial court denied the appellants' requested temporary injunction during the pendency of the action on the merits. We hold this was against the clear weight of the evidence. We hereby direct the trial court to enter a temporary injunction. The temporary injunction entered by this Court on October 25, 2021, shall remain in effect until the trial court's temporary injunction becomes effective. Having determined the trial court's order denying the temporary injunction was against the clear weight of the evidence, we need not rule on the appellants' other allegations of constitutional error. The matter is remanded to the trial court for further proceedings on the merits.

VACATED AND REMANDED FOR FURTHER PROCEEDINGS; TRIAL 
COURT DIRECTED TO GRANT TEMPORARY INJUNCTION; THIS 
COURT'S TEMPORARY INJUNCTION IS LIFTED ONCE THE TRIAL 
COURT'S TEMPORARY INJUNCTION BECOMES EFFECTIVE

Kauger (by separate writing), Winchester, Edmondson, Combs and Gurich, JJ., concur;

Kane, C.J. (by separate writing), Rowe, V.C.J. (by separate writing), Darby (by separate writing) and Kuehn (by separate writing), JJ., dissent.

FOOTNOTES

[1] The names of the Attorney General of Oklahoma, District Attorney of Oklahoma County, President of the Oklahoma State Board of Osteopathic Examiners, Commissioner of the Oklahoma State Board of Health, and the President of the Oklahoma State Board of Pharmacy have been updated to reflect the current persons serving in those positions. 12 O.S. 2021, § 2025 (D).

[2] Okla. Const. art. II, § 2:

All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry.

[3] Okla. Const. art. II, § 7:

No person shall be deprived of life, liberty, or property, without due process of law.

[4] ROA at 218 (Aff. of Ushma Upadhyay, Ph.D., M.P.H.).

 

 

KAUGER, J., concurring:

¶1 One of the dissents states:

"Any analysis of an abortion statute that proceeds under the proposition that the life of the unborn is unworthy of consideration is defective."

Any analysis of an abortion statute that proceeds under the proposition that the life of the mother is unworthy of consideration is defective.

 

 

Kane, C.J., with whom Kuehn, J. Joins, dissenting: 

¶1 The outright ban upon abortions in Oklahoma, 21 O.S. § 861, remains the law of the land in this State, notwithstanding the exceptions recently carved out by the majority in Oklahoma Call for Reproductive Justice v. Drummond, 2023 OK 24, 526 P.3d 1123, and Oklahoma Call for Reproductive Justice v. State, 2023 OK 60, 531 P.3d 117, and now this case. Ironically, these exceptions came forth as a direct result of our review of our legislature's attempts to more fully curtail abortions in Oklahoma prior to the United States Supreme Court's ruling in Dobbs v. Jackson Women's Health Organization, 142 S.Ct. 2228, 2279 (2022).

¶2 The constitutional analysis undertaken by the majority continues to omit the weighing of the rights and interests of the unborn. Any analysis of an abortion statute that proceeds under the proposition that the life of the unborn is unworthy of consideration is defective. In a separate concurring writing, my colleague makes the identical point as to the life of the mother. I completely agree with my colleague on this. However, the interests of the mother were the only interests considered by the majority- the rights of the unborn remain unheard.

¶3 I respectfully, but most strongly continue to dissent.

 

 

ROWE, V.C.J., with whom KUEHN, J., joins, dissenting:

¶1 In Oklahoma Call for Reproductive Justice v. Drummond, 2023 OK 24, 526 P.3d 1123, ("OCRJ I") the petitioners challenged 21 O.S. § 861, which was enacted in 1910 and prohibits elective abortion, alleging that the statute violated a woman's right to terminate a pregnancy under the Oklahoma Constitution. The Court held that the Oklahoma Constitution provides an inherent right to a pregnant woman to terminate her pregnancy when necessary to preserve her life. Id. ¶ 9, 526 P.3d at 1130. In so holding, we rejected the petitioners' constitutional challenge of § 861 because the statute contained an exception allowing a woman to obtain an abortion when necessary to preserve her life and, thus, did not infringe on the limited, Court-created right to abortion under the Oklahoma Constitution. Id. ¶ 13, 526 P.3d at 1131. Despite rejecting a constitutional challenge to § 861, which prohibits elective abortion, the majority in OCRJ I claimed to have made "no ruling on whether the Oklahoma Constitution provides a right to an elective termination of a pregnancy, i.e., one made outside of preserving the life of the pregnant woman as we have defined herein." Id. ¶ 10, 526 P.3d at 1130. Section 861 remains in effect today--its ban on elective abortion remains controlling law in Oklahoma.

¶2 Today, the majority once again claims to have "made no ruling on whether the Oklahoma Constitution provides a right to an elective termination of a pregnancy."[1] This is baffling to me. In Justice Kauger's concurrence to OCRJ I, wherein she was joined by Justices Edmondson and Combs, she wrote, "I fully concur in the majority opinion which finds 21 O.S. 2021 §861 constitutional."[2] Upholding a statute which criminalizes the performance of an abortion--except when necessary to save the mother's life--is completely irreconcilable with the majority's continued claim that we have not ruled on the constitutionality of elective abortion. The reality is that we answered the elective abortion question when we upheld the constitutionality of 21 O.S. § 861. The majority's refusal to acknowledge the import of OCRJ I at this point is misleading to the public and opens the door for further, fruitless litigation on a question this Court has already answered. I respectfully dissent.

FOOTNOTES

[1] Majority Op. at ¶ 5.

[2] For reference, 21 O.S. § 861 states:

Every person who administers to any woman, or who prescribes for any woman, or advises or procures any woman to take any medicine, drug or substance, or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life shall be guilty of a felony punishable by imprisonment in the State Penitentiary for not less than two (2) years nor more than five (5) years.

 

 

Darby, J., dissenting:

¶1 I respectfully dissent. The majority opinion finds that the district court abused its discretion in denying an injunction, against the clear weight of the evidence, based on state constitutional law, before this Court ever found any such constitutional right existed. See Okla. Call for Reprod. Justice v. Drummond (OCRJ I), 2023 OK 24, ¶¶ 7, 9, 526 P.3d 1123, 1129--30 (Mar. 21, 2023) (noting that this Court had not previously found a right to terminate a pregnancy in the Oklahoma Constitution and finding new state constitutional right to terminate a pregnancy when necessary to preserve life of mother); see also Order of Dist. Ct. Oct. 7, 2021 (CV-2021-2072) (denying temporary injunction based on challenge under state constitution). This Court has said that our limited role regarding federal constitutional questions "is to apply federal constitutional law, not to make it nor to guess what it may become." Okla. Coal. for Reprod. Justice, 2019 OK 33, ¶ 17, 441 P.3d 1145, 1152 (quoting Burns v. Cline, 2016 OK 121, ¶ 7, 387 P.3d 348, 351. I cannot agree with a holding in which we find the district court abused its discretion, against the clear weight of the evidence, when the district court denied an injunction--applying this Court's precedent, rather than trying to guess what this Court would hold in the future regarding state constitutional law.

¶2 Further, in its analysis regarding whether the statutes in question are likely to violate the new constitutional right that this Court found in OCRJ I, the majority repeatedly cites to cases from this Court applying the United States Supreme Court's former undue burden analysis. I do not believe any of this Court's past cases that applied the United States Supreme Court's caselaw regarding abortion are relevant at this time. In Dobbs, not only did the United States Supreme Court specifically disclaim the undue burden analysis, the Court also found that rational-basis review is the appropriate standard for challenges to state abortion regulations under the federal constitution. Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228, 2275, 2283, 213 L. Ed. 2d 545 (2022). But in OCRJ I, rather than choosing to apply the same standard of review as the United States Supreme Court, either pre- or post-Dobbs, the majority inexplicably applied a strict scrutiny analysis. See OCRJ I, ¶ 11 (Darby, J, dissenting) (noting the lack of explanation or citation to relevant caselaw for the new standard of review). Any analysis involving a potential "undue burden" is not part of a strict scrutiny review. Finally, I believe the majority opinion here misconstrues and misapplies the per curiam opinion in OCRJ I and attributes to it holdings I do not see. As such, I respectfully dissent.

 

 

KUEHN, J., DISSENTING:

¶1 In Oklahoma Call for Reproductive Justice v. Drummond (OCRJ I), 2023 OK 24, ¶ 9, 526 P.3d 1123, this Court held that abortion was prohibited in Oklahoma with a limited exception: the Oklahoma Constitution contains a limited right to terminate a pregnancy when necessary to preserve the life of the mother. I dissented to that opinion and I continue to disagree with it; I cannot find language in the Oklahoma Constitution which supports such a right, and I believe the creation of any right to abortion should be done by the people of Oklahoma, through initiative petition or their elected representatives. OCRJ I, 2023 OK 24, ¶ 9, 526 P.3d at 1158 (Kuehn, J., dissenting). However, I also believe that, having made that decision, this Court is compelled to give it full effect -- which the Majority here fails to do.

¶2 Appellants filed suit in Oklahoma County District Court in September 2021, claiming that five bills relating to abortion violated the due process section of the Oklahoma Constitution. All five bills were to go into effect on November 1, 2021. After a hearing, on October 7, 2021, the district court granted the request as to two bills but denied a temporary injunction as to the remaining three. None of those bills directly prohibit abortion itself; as the Majority explains, they involve physician board certification and admission privileges, ultrasounds, and reporting provisions, and provide criminal and civil penalties. Appellants filed a petition in error in this Court on October 13, 2021, and we granted a temporary injunction pending appeal shortly thereafter. In 2022, the United States Supreme Court decided Dobbs v. Jackson Women's Health Org., 142 S.Ct. 2228 (2022). And this Court decided OCRJ I in 2023. These dates are not incidental: they are the heart of the problem.

¶3 After summarizing the OCRJ I ruling, the Majority engages in a substantive analysis of Appellants' claims. The Majority describes the various statutory provisions at issue, summarizes the parties' arguments, purports to describe and analyze the effects and consequences of each bill, and concludes that the "clear weight of the evidence presented" shows that the bills would "place unnecessary burdens on the lawful termination of a pregnancy". Thus, the Majority determines that the trial court erred in refusing to enter a temporary injunction prohibiting the bills' enforcement. This conclusion -- that the effect of the bills violates the limited right to abortion granted by the Oklahoma Constitution -- addresses the first factor in the right to injunctive relief. The Majority has found that Appellants are likely to succeed on the merits in their claim because the bills are unconstitutional.

¶4 The Majority frames this as a decision on a temporary injunction, without deciding the underlying constitutional claim. However, it is impossible to say that the bills are unconstitutional for injunctive purposes and yet pretend that they may not be unconstitutional for every purpose. In fact, the Majority makes a substantive finding on the merits of Appellants' claims. The problem is that there is no evidence in the record on which this Court may base such a finding. The Majority recognizes that this Court only recently discovered a limited right to abortion in the Oklahoma Constitution. However, Appellants' claims were presented to the district court in the autumn of 2021, to determine the constitutionality of bills which went into effect in November 2021, well before we decided OCRJ I. In fact, all three bills were adopted and went into effect before the Supreme Court's decision in Dobbs. Consequently, the district court was unable to take into consideration either the Supreme Court's ruling or the limited scope of the right to terminate a pregnancy this Court has since found in the Oklahoma Constitution. All parties tailored their presentations to the district court in service of a much broader claim -- a right to abortion, elective or otherwise, found in the Oklahoma Constitution -- and the court's determinations were made with that claim in mind. Moreover, at the time the district court heard this issue, there was no clear right to abortion of any kind based in the Oklahoma Constitution, as this Court had not yet decided OCRJ I. We presume that the district court based its decision to deny injunctive relief as to these bills based on the law in effect at the time.

¶5 This case is before us on appeal from a district court decision. The district court had no opportunity to consider the evidence in light of the law as it is now. No record was developed below as to whether any of the three bills at issue here (or, for that matter, the two bills for which an injunction was granted) violate the limited right to terminate a pregnancy to preserve the life of the mother. This Court is not a finder of fact. Howard v. Zimmer, 2013 OK 17, ¶ 34, 299 P.3d 463, 474. Yet, the Majority confidently recites "facts" and "evidence" to support its conclusion that the bills do in fact violate that right. These "facts" apparently come from affidavits provided by the parties, all filed before this Court's decision in OCRJ I. In general, affidavits may help this Court determine the merits of a given issue. However, these affidavits were filed before the controlling cases were decided and before the parties had the chance to address the current law.

¶6 I would remand this case to the district court to allow the parties and that court to address these claims in light of the current law. The district court can then decide to issue a temporary injunction, or not, based on relevant evidence and argument. Should any party appeal, this Court can decide that appeal on a record developed below. By directing the district court to enter a temporary injunction, this Court ensures that no court will have an opportunity to consider the request for an injunction on its merits in light of the law.[1] Although this case has been pending in this Court for several years, that is no excuse to rush a fundamental decision.

¶7 It is possible, after hearing evidence and argument based on the current law, that the district court will apply the Majority's holding in OCRJ I and find one or more of these bills unconstitutional. It is possible that evidence will show one or more of the bills does not in fact place unlawful burdens on the limited right to terminate a pregnancy, as set forth in OCRJ I. But it is certain that any finding this Court makes now must be based on anecdote and speculation. I dissent.

¶8 I also concur in Justice Rowe's dissent to the Majority's unnecessary comment that OCRJ I made no ruling on whether the Oklahoma Constitution provides a right to elective termination of pregnancy. This flatly contradicts both the reasoning and holding of OCRJ I: if the Oklahoma Constitution protected elective abortions, there would be no need to discover a limited protection in contemporaneous statutory language, and when the Court found a limited protection using Dobbs reasoning, it foreclosed the possibility of finding a more expansive right in the same language.

FOOTNOTES

[1] What is the trial court to do on remand? Appellants raised claims regarding five bills below. After a hearing the district court granted a temporary injunction as to two of them. Appellants appealed the denial of the injunction as to the remaining three, and all the proceedings below were stayed. None of the substantive claims have been heard on their merits; presumably we are remanding the case to allow the merits determination to proceed. The district court will make that determination in light of Dobbs, OCRJ I, and the holding in this appeal, in which the Majority squarely finds the three bills which are the subject of this appeal unconstitutional. Surely, as to these claims, the district court must give effect to that conclusion, finding for Appellants as a matter of law. And the district court must decide how this decision affects the analysis of the remaining bills.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2023 OK AG 12, 
Question Submitted by: The Honorable Warren Hamilton, Oklahoma State Senate, District 7, et al.
Cited

 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1993 OK 1, 846 P.2d 370, 64 OBJ 144, 
Smith v. State ex rel. Bd. of Regents of Oklahoma State University
Discussed

 
1996 OK 109, 925 P.2d 546, 67 OBJ 2930, 
Sharp v. 251st Street Landfill, Inc.
Discussed

 
2013 OK 17, 299 P.3d 463, 
HOWARD v. ZIMMER, INC.
Discussed

 
2013 OK 50, 304 P.3d 457, 
DOWELL v. PLETCHER
Discussed at Length

 
2014 OK 48, 330 P.3d 497, 
OKLAHOMA PUBLIC EMPLOYEES ASSOC. v. OKLAHOMA MILITARY DEPT.
Discussed at Length

 
2015 OK 58, 378 P.3d 54, 
EDWARDS v. BOARD OF COUNTY COMMISSIONERS
Discussed

 
2016 OK 121, 387 P.3d 348, 
BURNS v. CLINE
Discussed at Length

 
2019 OK 33, 441 P.3d 1145, 
OKLAHOMA COALITION FOR REPRODUCTIVE JUSTICE v. CLINE
Discussed at Length

 
2023 OK 24, 526 P.3d 1123, 
OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE v. DRUMMOND
Discussed at Length

 
2023 OK 60, 531 P.3d 117, 
OKLAHOMA CALL FOR REPRODUCTIVE JUSTICE v. STATE OF OKLAHOMA
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 861, 
Compensation for Costs
Cited

 
12 O.S. 2025, 
Substitution of Parties
Cited

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 861, 
Procuring an Abortion
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA